**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ELIZABETH MARIE SCHELK,**

        **Plaintiff,**

**-vs-**                                              **Case No. 6:13-cv-461-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on November 18, 2009, alleging an onset of disability on November 26, 2006, due to nerve damage, pain, and numbness in her right hand and arm, migraines, and "cervical strain." R. 83, 90, 102, 105, 160-67, 198, 261, 264. Plaintiff's date of last insured was December 31, 2009. Her application was denied initially and upon reconsideration. R. 84-89, 103-07. Plaintiff requested a hearing, which was held on June 28, 2011,

before Administrative Law Judge Stephen C. Calvarese (hereinafter referred to as "ALJ"). R. 29-81. In a decision dated October 6, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-22. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on January 18, 2013. R. 1. Plaintiff filed this action for judicial review on March 21, 2013. Doc. 1.

**B.     Medical History and Findings Summary**

Plaintiff was born February 28, 1984 and was 27 years old at the time of the Commissioner's decision on October 6, 2011. R. 20, 36. She has a high school education and past work as a home health aide. R. 20, 36, 69, 204. Plaintiff worked part time from November 2006 to April 2007 for 15 hours a week, earning $8.50/hour as a home health aide, after the alleged disability onset date, but this work activity did not rise to substantial gainful activity level. R. 15.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of bipolar disorder, depression, anxiety, schizophrenia, neurological damage, cervical strain, fractured right tibia, fractured left tibia, fractured right clavicle, lumbosacral strain, chip fracture, migraine headaches, sciatic nerve problem, right arm and hand numbness, anxiety, and insomnia. R. 51-53, 198, 264, 295.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a history of right tibia and left patellar fractures, post-traumatic pain in the back and knees, and opiate dependency with mood disorder were "severe" medically determinable impairments, but were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work except that Plaintiff was limited to simple, routine tasks in a low-demand work environment, with only brief interaction with others, and with few changes in the work environment. R. 16. The ALJ also found Plaintiff had moderate limitations

in the ability to complete a normal workweek, interact appropriately with the general public, and respond appropriately to changes in a work setting. R. 16. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 20. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as tap room attendant, microfilm monitor, routing clerk, router, document preparer, and table worker. R. 20-21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 21.

Plaintiff now asserts two points of error. First, she argues that the ALJ erred by not applying the correct legal standards in omitting Plaintiff's hand and neck impairments. Second, she contends the ALJ erred by not applying the correct legal standards when he failed to state the weight he gave to multiple opinions and statements. For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Severe neck and hand impairments

Plaintiff argues that the medical evidence showed severe neck and hand impairments and the ALJ erred in failing to including these limitations in Plaintiff's RFC. The Commissioner argues that the ALJ properly evaluated Plaintiff's impairments.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Plaintiff contends that the ALJ did not apply the correct legal standards to Plaintiff's hand and neck impairments. She first argues that the ALJ erred in incorrectly assessing her symptoms from carpal tunnel syndrome, which Dr. Sharma diagnosed in March 2011 based on nerve conduction studies showing carpal tunnel neuropathy. R. 599, 681, 84. Plaintiff testified that she has carpal tunnel syndrome which causes numbness, dropping things, and being unable to drive because she cannot feel the steering wheel; her boyfriend and her grandmother noted similar limitations in their third-party reports. R. 62-63, 232, 250. She argues that the ALJ erred in failing to include carpal tunnel syndrome in his findings, and instead found Plaintiff had "unlimited pushing and pulling." R. 15-22, 71.

Second, Plaintiff argues that the ALJ erred in failing to include her neck impairment as a "severe" impairment in her RFC and the hypothetical to the VE. She points to an MRI which revealed disc protrusions and effacement at multiple levels in the cervical spine (R. 592), her testimony that she has neck pain when looking up, left, and right (R. 49) and medical records that mention cervical radiculitis, cervical symptoms, and headaches. R. 336-40, 492, 669.

The Commissioner argues that Plaintiff failed to demonstrate she had work-related limitations from any hand or neck impairment, and her subjective complaints alone cannot establish disability. The Commissioner contends the record must include medical signs and findings showing the

-5-

existence of a medical impairment that, when considered with all the other evidence, would lead to a conclusion the claimant was disabled. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(a), 416.929(a). The Commissioner argues that the ALJ sufficiently acknowledged Plaintiff's subjective complaints in the decision but concluded that Plaintiff retained the RFC to perform light work with additional non-exertional limitations. R. 16. The Commissioner also argues that Plaintiff has not identified any supporting evidence to show she had limitations related to Dr. Sharma's diagnosis of her with carpal tunnel, and a diagnosis alone will not establish limitations. The Commissioner also argues that Plaintiff failed to show that her condition was limiting or even existed for a continuous period of twelve months, as is required to establish disability in that the medical evidence cited by Plaintiff is limited to March 2011, after which time there is no evidence of further diagnoses or treatment. The Commissioner contends, even if the ALJ erred in failing to find that Plaintiff had severe hand or neck impairments, the error was harmless because the ALJ found that Plaintiff had other severe impairments and thus proceeded with the sequential inquiry.

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain, a non-exertional impairment, can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although

an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In determining Plaintiff's RFC, the ALJ found that Plaintiff had "poor credibility" regarding her objective physical condition and her resulting limitations, in addition to a two-year methadone dependence problem, based on inconsistent and conflicting information regarding "very active" activities of daily living (including visiting friends, watching TV, reading, preparing meals, dusting, laundering clothes, driving, walking, going out alone, and shopping) and testimony that she performed work after the alleged onset date as a home health aide which, while not substantial gainful activity, indicative that her activities of daily living have, at least at times, been somewhat greater than she has generally reported. R. 17-18. The medical evidence of record showed that Plaintiff was hit as a pedestrian by a motor vehicle and sustained injuries to her right shoulder and knees. R. 18. Plaintiff testified she was able to do all aspects of work as a certified nursing assistant prior to her accident, as noted by the ALJ, but also testified that mental problems that started prior to her alleged onset date currently prevent her from performing the mental demands of work. R. 18. However, the ALJ found, there was no indication in the record of an exacerbation of the claimant's mental problems that would cause a decline in her mental functioning. R. 18. The ALJ found Plaintiff's testimony that her grandmother cared for her seven month old child "incredulous" since her grandmother owned a

personal care business and would not be capable of providing full-time care for an infant while also running a business. R. 18.

The ALJ noted in his opinion that Plaintiff essentially testified she was unable to work due to her residual impairments after a November 2006 accident when she was hit by a car as a pedestrian; she testified that she had fractures in both knees; five bulging discs in her neck; lumbar scarring; and fracture of the left clavicle; the doctor gave her some injections but never performed surgery and stopped seeing her when the insurance ran out. R. 17. The ALJ also cited Plaintiff's testimony that "her pain, on a scale of 1 to 10, is a 7 to 8 and the pain in her back is an 8, even with pain medication (Methadone)." R. 17.

In addition, the ALJ summarized Plaintiff's statements concerning her mental impairments precluding her ability to work, which she stated were worse than her physical problems; she was being treated for bipolar disorder and has recurring nightmares from the accident, thus, she was prescribed various psychotropic medications. R. 18. She also stated that she had been in and out of psychiatric hospital since she was eight years old for suicidal gestures, and she had overdosed (not on purpose) on lithium two weeks before. R. 18. Notably, the ALJ cited Plaintiff's acknowledgment that she was addicted to opiates (Lortab) for 6 months, and she had been on methadone treatment for 2 years. R. 18. The ALJ noted that records from May 2009 to June 2011 of Daytona Methadone Clinic showed that Plaintiff was an intravenous drug user and she was undergoing substance abuse treatment with no evidence she had successfully completed the program. R. 19. The ALJ also cited subsequent records from June 2010 to June 2011 from Lakeside Behavioral Health showing Plaintiff was undergoing mental health treatment for bipolar and manic depressive disorders, but "absolutely no clinical data provided that supports a limiting mental impairment." R. 19.

The ALJ additionally reviewed the medical diagnostic imaging of the right shoulder, noting it was unremarkable with no evidence of a fracture, only that of a shoulder separation, which was

contrary to Plaintiff's testimony that she fractured her clavicle. R. 18.  Imaging of the knees revealed possible bilateral patella fracture with internal derangements, right greater than the left, and right tibia fracture and she was prescribed a walker because she was restricted from weight bearing on the right lower extremity; bilateral knee braces; and a right arm sling. R. 18-19.  As the ALJ noted, Plaintiff was determined not to be a candidate for surgery and was discharged with a good prognosis, and an October 2007 MRI of the right knee and an August 2008 MRI of the left knee were unremarkable for fracture or tear; September 2008 imaging of the thoracic spine was also negative. R. 19.  March 2011 MRIs of the cervical and lumbar spines show evidence of only mild degenerative disc disease; and March 2011 EMG studies of the lower extremities were remarkable for only mild sensory deficits of the peroneal nerve bilaterally. R. 19.

The ALJ's summary of Plaintiff's testimony and of the medical evidence was accurate and his discounting of Plaintiff's statements and credibility was based on substantial evidence.  The ALJ based his decision as to Plaintiff's physical impairments on the "unremarkable" physical examination by the consultative examiner Dr. Carpenter (partner of Dr. Shoemaker, who the ALJ inadvertently quotes in error) who noted in January 2010 that, although Plaintiff complained of pain in her left shoulder, knees, and low back secondary to the November 2006 accident, she reported being capable of performing her activities of daily living without difficulty or assistance.  He reported that Plaintiff had full range of motion in her upper and lower extremities with no sensory or motor deficits; 5/5 bilateral grip strength; normal fine and gross manipulation skills; she ambulated normally without a limp or assistive device; and she had a normal neurological exam; he opined that Plaintiff was capable of sedentary and light physical activities.  R. 19 (citing R. 532-34).

After summarizing the extensive physical and mental health treatment records, the ALJ found that "records [did] not contain any opinion from treating or examining physicians that the claimant is disabled or even has limitations greater than those determined in this decision." R. 20.

Plaintiff contends that the ALJ erred in failing to recognize her carpal tunnel syndrome and neck impairments were severe and including them in her RFC. Dr. Sharma diagnosed Plaintiff in March 2011 with mild to moderate early median mononeuropathy across the carpal tunnel bilaterally and mild slowing across the cubital tunnel bilaterally with well-preserved distal velocities but no acute radiculopathies. R. 599, 681, 684. The ALJ noted Plaintiff's testimony regarding numbness and tingling in her arm from the elbow to her fingers that had begun 4 months prior, and concerning her inability to drive because she could not feel her hands on the steering wheel. R. 17. However, the ALJ found that the treatment records from Dr. Sharma dated March 2011 to June 2011 showed Plaintiff was undergoing pain management; Dr. Sharma performed an examination with palpation and range of motion testing; however, no restrictions were placed on her. R. 19. In March 2011, Dr. Sharma noted that Plaintiff had obtained wrist splints "which helped," and had received carpal tunnel steroid injections. R. 679-82. Although the subsequent treatment notes are very redundant in merely carrying over the history and diagnosis from prior appointments, they do not reflect any additional treatment (such as steroid injections) for carpal tunnel syndrome, suggesting that treatment was effective. R. 664-76, 681-82. The ALJ noted: "Given the claimant's allegations of totally disabling symptoms, one might expect some indication in the treatment records of restrictions placed on her by the treating physician. Yet a review of Dr. Sharma's records reveals no restrictions were placed on the claimant." R. 19. Plaintiff points to MRI's which allegedly "revealed disc protrusions and effacement at multiple levels in the cervical spine, and medical records that mention cervical radiculitis, cervical symptoms, and headaches." However, according to the MRI ordered by Dr. Sharma, Plaintiff had only "a small central protrusion" at C4-5, and a disc protrusion with minimal impression and mild encroachment at C5-6 with no fracture or subluxation; there were no significant abnormalities at the other discs. R. 592. The ALJ accurately noted that March 2011 MRIs of the cervical and lumbar spines showed evidence of "only mild degenerative disc disease; and March 2011

-10-

EMG studies of the lower extremities were remarkable for only mild sensory deficits of the peroneal nerve bilaterally." R. 19. Other citations to "records" listed by Plaintiff consist primarily of hospital emergency room forms with a standard list of symptoms circled without elaboration or testing and merely reflect Plaintiff's subjective complaints. R. 336-40, 492, 669. Earlier records, such as the January 2010 Consultative examination by Dr. Carpenter, did not find any limitations with respect to Plaintiff's neck. R. 532-34. Dr. Sharma treated Plaintiff with an epidural steroid injections, but did not assign limitations and refused to provide an RFC assessment when Plaintiff requested one. R. 310, 669. As such, the ALJ's determination that "[t]he records do not contain any opinion from treating or examining physicians that the claimant is disabled or even has limitations greater than those determined in this decision (R. 20)" was based on substantial evidence.

**B. Other opinion evidence**

Plaintiff contends that the ALJ erred in failing to mention or state the weight given to the opinion of the nurse practitioner[1], Ms. Burdine at Lakeside Alternatives Outpatient Department, who opined that Plaintiff was unable to work due to her mental illness, and had poor insight, poor judgment. R. 602, 611. Plaintiff argues that the ALJ erred in violation of the Eleventh Circuit's decision in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011), which requires the ALJ to state with particularity the weight given to the opinion of the treating physician and the reasons the ALJ did not credit it. The Commissioner contends that Ms. Burdine's "opinions" cited by Plaintiff are merely generic form letters which state that the unnamed patient "is unable to work at this time due to mental illness" and note the patient is receiving outpatient treatment for the diagnosis of bipolar type I disorder. R. 602, 611. The Commissioner argues that Ms. Burdine's "opinion" that Plaintiff was "unable to work" represents an opinion on an issue reserved for the Commissioner; thus, even if the ALJ erred by failing to credit Ms. Burdine's conclusory form letters,

---

[1]Both parties acknowledge that a nurse practitioner is not an acceptable medical source. Doc. 17 at 11; Doc. a8 at 16.

this is at most harmless error. See 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183.

The Commissioner also contends that the ALJ was not required to consider the GAF scores assigned by Ms. Burdine because a GAF score merely reflects the examiner's impression of the person's alleged symptoms or possible difficulty in functioning when seen on a particular day, and the Commissioner has declined to endorse GAF scores for use in the disability programs. The Commissioner argues that the ALJ explicitly considered Plaintiff's records from Lakeside Behavioral Center, which included the medication evaluations she cites in her brief (R. 607-08, 624), and properly found there was no clinical data supporting limitations resulting from a mental impairment (R. 19). Thus, the Commissioner argues the ALJ was not required to specifically address individual GAF scores included in the records or Ms. Burdine's notes.

> The Commissioner is correct that the ALJ did discuss the notes from Lakeside Alternatives:
>
> There are treatment records dated June 2010 to June 2011 from Lakeside Behavioral Health that show the claimant undergoing mental health treatment for bipolar and manic depressive disorders. There is absolutely no clinical data provided that supports a limiting mental impairment; and for that reason no weight is given to the mental residual functional capacity assessment from Brett Althafer, LCSW dated July 12, 2011 that essentially reports the claimant was not capable of performing the mental demands of work.

R. 19. The forms Ms. Burdine filled out for Plaintiff in June and December 2010 were one-paragraph preprinted forms in which Ms. Burdine filled in Plaintiff's name for the standard verbiage that she was unable to work. As the Commissioner points out, it is unclear for whom and for what purpose Ms. Burdine intended the letters, which were unaddressed and directed "to whom it may concern." R. 602, 611. On June 30, 2010, Ms. Burdine added on one of the standard forms: "Her diagnosis is Bipolar type I disorder" without any elaboration. In November 2010, Ms. Burdine wrote: "Elizabeth's initial visit was on 6-02-10. She was begun on treatment that day. Her estimated progress is good with continued appropriate treatment." R. 604. Although there are two treatment plans from Lakeside in

the Record, neither one contains treatment notes in support from 2010, and Plaintiff was "discharged" from receiving outpatient treatment in November 2010 after making "minimal progress with her goals." R. 628-29. Subsequent treatment notes from Lakeside dated 2011 show that Plaintiff had a GAF score of 40 and emotional problems and hallucinations when her grandmother chose to take her off Klonopin (which the primary care doctor had prescribed) in June 2011. R. 623, 625. The Lakeside therapists instructed Plaintiff's grandmother that Plaintiff had to be weaned off the medication safely rather than abruptly discontinued[2]. R. 623-24. Although the social worker, Mr. Althafer of Coastal Mental Health Center, completed a Mental RFC Assessment in July 2011, there are no treatment notes to support his opinion in the Record and the ALJ properly rejected these restrictions. R. 19-20; 619.

The state reviewing physicians opined that Plaintiff might have difficulties with tasks involving sustained focus and complex mental demand but she remained capable of carrying out simple instructions and tasks as reflected in her activities of daily living; she was mentally capable of independently performing routine tasks in a low demand work environment. R. 555, 576. The ALJ did discuss the mental healthcare opinions and stated his reasons for rejecting them. His decision in this regard was based on substantial evidence.

Plaintiff also argues that the ALJ erred failing to state the weight given to the testimony of Plaintiff's grandmother and Plaintiff's boyfriend as to Plaintiff's subjective statements of pain and her limitations. Plaintiff's grandmother stated that Plaintiff had pain, numbness, tiredness, and limited activities (R. 237), and that her impairments affect her ability to use her hands, sit, walk, stand, reach, lift, squat, bend, kneel, understanding, follow instructions, concentrate, complete tasks, and get along with others (R. 232). Plaintiff's boyfriend stated that she had depression and physical pain (R. 245),

---

[2]Plaintiff repeatedly requested that the Daytona Methadone Clinic – where she received treatment from December 2010 to May 2011 – reschedule her appointments due to "work conflicts." *See, e.g.,* R. 636, 638, 640.

-13-

and her impairments affect her ability to use her hands, lift, squat, bend, stand, walk, sit, reach, talk, kneel, concentrate, complete tasks, understand, follow instructions, and get along with others. R. 250.

The Commissioner argues that the ALJ properly considered all of the relevant evidence in assessing Plaintiff's RFC, including the objective medical findings, the consultative examination report, and Plaintiff's subjective complaints, treatment history, and daily activities (R. 16-20).

As explained above, the ALJ's decision finding Plaintiff's credibility to be "poor" was based on substantial evidence. The assertions made by Plaintiff's grandmother and her boyfriend about Plaintiff's limitations and daily activities reflect her statements to them and read as if nearly verbatim as the assertions made by Plaintiff and are not entitled to any additional weight in this case. The ALJ's decision is based on substantial evidence.

### IV.     CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 5, 2014.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record